UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 22-2993 (MJD/JFD)

SCOTT MICHAEL FAUL,

    Petitioner,

v.

MICHAEL LEJEUNE, Warden,

    Respondent.

**RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**

## INTRODUCTION

Petitioner Scott Faul ("Faul") filed this 28 U.S.C. § 2241 habeas petition requesting release from federal custody based on his allegation that the U.S. Bureau of Prisons ("BOP" or "Bureau") has misconstrued and misapplied 18 U.S.C. § 4206(d), which governs his mandatory parole date. He claims that since he has served 39 years and 9 months of his "old law" sentence, he is entitled to be immediately released from custody. The petition should be denied because, pursuant to § 4206(d), the BOP has correctly calculated Faul's "mandatory" two-thirds parole date and the United States Parole Commission ("USPC" or "Commission") recently properly denied parole to Faul on the basis that he would likely commit another crime.

## BACKGROUND FACTS

**I.    Faul, Register No. 04564-059, is a Federal Prisoner in the State of Minnesota.**

In February 1983, Faul was involved in a shootout in which two U.S. Marshals were killed and one was injured. *See* Certificate of Bernard Desrosiers, Ex. 1 at 1-2. Local sheriff and police officers assisting in this matter were also injured. *Id.*

1

After being convicted by a jury, on June 24, 1983, the U.S. District Court for the District of North Dakota imposed the following sentence on Faul: (1) two concurrent Life terms for two counts of second-degree murder of Federal Officers and aiding and abetting, in violation of 18 U.S.C. §§ 1111, 1114 and 2; (2) concurrent 10-year sentences, to run consecutive to the Life term, on each of four counts of forcibly assaulting and impeding Federal Officers by use of a deadly weapon and aiding and abetting, in violation of 18 U.S.C. §§ 111, 1114 and 2; (3) a 5-year sentence, to run consecutive to the Life sentence and the 10-year sentence, for one count of harboring and concealment of fugitive and aiding and abetting, in violation 18 U.S.C. §§ 1071 and 2; and (4) a 5-year sentence for one count of conspiracy to assault, in violation of 18 U.S.C. § 371, to run concurrently with all other sentences.[1] *See* Declaration of Jon McEvoy ¶ 4, Ex. A at 2-3, Ex. B at 1. In effect, Faul was sentenced to a sentence of Life with an additional aggregated 15 years to be served consecutively. *Id.* His conviction was affirmed on appeal. *See United States v. Faul*, 748 F.2d 1204 (8th Cir. 1984).

Faul's "mandatory" two-thirds parole date is February 14, 2023. *See* McEvoy Decl. ¶ 8, Ex. A at 1. He is currently serving his sentence at the Federal Correctional Institution in Sandstone, Minnesota ("FCI Sandstone"). *Id.*

## II.     Overview of the Federal Parole System

"The Parole Act of 1976 was the product of nearly a decade of study and evaluation by the executive and legislative branches." *Wallace v. Christensen, 802 F.2d* 1539, 1542

---

[1] Co-defendant Yorie Von Kahl was convicted of the same charges and received an identical sentence. *See infra.*

(9th Cir. 1986) (citing S. Rep. No. 94-369, 94th Cong., 2d Sess. 1, 16, reprinted in 1976 U.S.C.C.A.N. 335, 338). The Parole Commission and Reorganization Act of 1976 included three principal elements: (1) creation of a United States Parole Commission to promulgate guidelines and render parole decisions; (2) formalization of procedures to govern parole determinations; and (3) establishment of an appeals process. *See* 1976 U.S.C.C.A.N. 336–37. Because the parole system was abolished by the Comprehensive Crime Control Act of 1984, it applies only to prisoners who committed offenses prior to November 1, 1987. *See Romano v. Luther*, 816 F.2d 832, 833-35 (2d Cir. 1987).

### III. Types of Federal Parole

Federal inmates subject to the Parole Act may qualify for one of two types of parole: discretionary parole or "mandatory" (now known as two-thirds) parole. An inmate serving a sentence longer than 30 years, including life sentences, becomes eligible for discretionary parole after 10 years. 18 U.S.C. § 4205(a). A prisoner may be released on discretionary parole if the Commission determines that (1) the prisoner has substantially observed institutional rules; (2) release would not depreciate the seriousness of the inmate's offense or promote disrespect for the law, and (3) release would not jeopardize the public welfare. 18 U.S.C. § 4206(a).

An inmate who is not released on discretionary parole may become eligible for "mandatory" parole under the following statute:

> Any prisoner, serving a sentence of five years or longer, who is not earlier released under this section or any other applicable provision of law, shall be released on parole after having served two-thirds of each consecutive term or terms, or after serving thirty years of each consecutive term or terms of more than forty-five years including any life term, whichever is earlier:

3

> Provided, however, That the Commission shall not release such prisoner if it determines that he has seriously or frequently violated institution rules and regulations or that there is a reasonable probability that he will commit any Federal, State, or local crime.

18 U.S.C. § 4206(d). Despite its name, "mandatory" parole is not, in fact, mandatory. *See, e.g., Durfur v. U.S. Parole Comm'n.,* 314 F. Supp. 3d 10, 12 (D.D.C. 2018) ("This case presents the question whether mandatory parole in the federal prison system is mandatory. It is not."), *aff'd*, 34 F.4th 1090 (D.C. Cir. 2022). Even if an inmate is eligible for mandatory parole, he will not be released if the Commission determines either (1) that the prisoner has "seriously or frequently violated institution rules and regulations" or (2) that there is a "reasonable probability" the prisoner "will commit any Federal, State, or local crime." 18 U.S.C. § 4206(d).

BOP Program Statement 5880.30, *Sentence Computation Manual/Old Law/Pre CCCA 1984*, similarly states regarding parole eligibility under 18 U.S.C. § 4206(d):

> Any prisoner, serving a sentence of <u>five years or longer</u> who is not earlier released under this section or any other applicable provision of law, shall be released on parole after having served two-thirds of each consecutive term or terms, or after serving thirty years of each consecutive term or terms of more than forty-five years including any life term, whichever is earlier: Provided, however, That the Parole Commission shall not release such prisoner if it determines that he has seriously or frequently violated institution rules and regulations or that there is a reasonable probability that he will commit any Federal, State or local crime.

McEvoy Decl. ¶ 10, Ex. G at 70. Due to Faul's sentence of Life plus 15 years, his two-thirds "mandatory" parole date has been established by the BOP as being February 14, 2023. *Id.* ¶ 8, Ex. A at 1.

### IV. Procedures Governing Parole Determinations

Parole determinations are made following three types of hearings: initial hearings, reconsideration hearings, and interim hearings. When an inmate first becomes eligible for discretionary parole, the USPC will conduct an "initial hearing." 28 C.F.R. § 2.13. If parole is not granted at an initial hearing, the examiner will set a "reconsideration hearing" 15 years from the date of the denial, unless the prisoner is to become eligible for "mandatory" parole before the 15 years have elapsed, at which point the USPC is allowed to "continue to expiration" with the understanding that a mandatory parole hearing would be held to reassess the offender's case. 28 C.F.R. §§ 2.12(b). Between an initial hearing and a reconsideration (or mandatory) parole hearing, an inmate is given regular interim hearings. 18 U.S.C. § 4208(h); 28 C.F.R. § 2.14. For prisoners serving terms greater than 7 years, interim hearings are conducted every 24 months. 18 U.S.C. § 4206(h)(2); 28 C.F.R. § 2.14(a)(1)(ii). The purpose of an interim hearing is to consider "significant developments or changes with the prisoner's status" that have occurred since the previous hearings. 28 C.F.R. § 2.14(a).

Parole hearings are conducted by hearing examiners. 28 C.F.R. § 2.23(a). At a parole hearing, the examiner will discuss the prisoner's offense severity rating and salient factor score and will review the inmate's institutional conduct. 28 C.F.R. § 2.13(a). The examiner may consider a wide range of evidence, including official reports of the inmate's criminal record, recommendations from prosecutors and other interested parties, any substantial information regarding aggravating or mitigating circumstances, and any additional relevant information concerning the prisoner, including Pre-sentence Reports

and other descriptions of the underlying offense conduct. 18 U.S.C. § 4207; 28 C.F.R §§ 2.19(a)-2.19(b)(1). At these hearings, a prisoner may be represented. 28 C.F.R. § 2.13(b). The prisoner's representative may "offer a statement" and may provide "additional information as the examiner shall request." 28 C.F.R. § 2.13(c). Interested parties who oppose parole may also appear and offer a statement. *Id*. At interim hearings, the examiner will only consider evidence regarding "significant developments or changes in the prisoner's status" since his or her last hearing. 28 C.F.R. §§ 2.14, 2.55(b).

At the conclusion of any hearing, the examiner will make a recommendation on the record and prepare a post-hearing summary. 28 C.F.R. §§ 2.13(c), 2.23. The post-hearing summary will be reviewed by an executive hearing examiner, who will make his or her own recommendation regarding parole. 28 C.F.R. § 2.23(b). If the executive hearing examiner agrees with the hearing examiner's recommendation, the recommendation is submitted to the USPC for the final determination. If the executive examiner does not agree, the case will be sent to a second executive examiner until there is a concurrence of two. 28 C.F.R. §§ 2.23(c)-(d), 2.24(a). An inmate will be informed of the USPC's decision through a "Notice of Action."

A prisoner who is dissatisfied with a parole determination may appeal that decision to the National Appeals Board within 30 days of the date of the Notice of Action. 28 C.F.R. § 2.26(a)(2). The appeal must summarize the grounds for the appeal and "concisely explain the reasons supporting each ground. *Id*. The prisoner may also provide additional information for the Appeals Board to consider. *Id*. After considering the appeal, the Appeals Board may affirm, reverse, or modify the USPC's decision or may order a new

hearing. 28 C.F.R. § 2.26(b)(1). A decision by the Appeals Board is final. 28 C.F.R. § 2.26(c).

## V.      Summary of Faul's Relevant Parole Hearing History

On December 30, 2002, Faul had his initial parole hearing before the USPC. Desrosiers Ex. 2. At that hearing, it was determined that Faul's parole guidelines were a minimum of 100 months with no corresponding upper limit since the offense of conviction involved murder. *Id.* at 4. The Examiner noted that Faul had incurred four Discipline Hearing Officer ("DHO") infractions during his time in prison: Possession of Anything Not Authorized, Assault and Insolence, Refusal to Obey an Order, and Fighting with Another Person. *Id.* at 2. Faul admitted to accumulating those infractions and to the description of the underlying offense conduct, except for the Assault charge. *Id.* The Examiner noted the infractions were all minor in nature and agreed with Faul that the Assault charge did not appear to rise to the level of an assault on a correctional officer. *Id.* The USPC determined that Faul should be continued for a 15-year reconsideration hearing in December 2017, based on the seriousness of his offenses and his lack of clear conduct in prison. Desrosiers Ex. 3. Faul appealed this decision to the National Appeals Board, which affirmed the USPC's decision. Desrosiers Ex. 4.

On July 28, 2004, Faul waived parole consideration for his statutory interim hearing set for the Summer of 2004. Desrosiers Ex. 5. Faul did not reapply for parole until September 2017. Desrosiers Ex. 6.

On December 12, 2017, a hearing examiner presided over Faul's 15-year Reconsideration Hearing at FCI Sandstone. Desrosiers Ex. 7. However, Faul refused to

proceed with the hearing, alleging dissatisfaction with pre-hearing disclosures received. *Id.* The USPC granted his request for a continuance and rescheduled his hearing for the next available docket. Desrosiers Ex. 8.

On April 16, 2018, Faul had his 15-year Reconsideration Hearing. Desrosiers Ex, 9. At this hearing, Faul denied his offense conduct and claimed that his actions were taken in self-defense. *Id.* 1-4. Faul also indicated that he was not lawfully convicted of any of the offense conduct. *Id*. This was a marked reversal from the last hearing that saw Faul admit to his actions and the illegality of them. *Id.* The USPC continued Faul to the expiration of his sentence, finding it concerning that he had begun denying culpability in the murder of the law enforcement officers he was convicted of killing. Desrosiers Ex. 10. In addition, the USPC noted that Faul had failed to participate in any meaningful programming in the 35 years he had been incarcerated. *Id.* The USPC noted that although Faul was continued to the expiration of his sentence, he would have a statutory interim hearing in April 2020 and would be eligible for a "mandatory" parole hearing when he reached the two-thirds date of each consecutive sentence (and 30 years for life sentences). *Id*. Faul appealed this decision to the National Appeals Board, alleging error in the BOP's calculation of his "mandatory" parole date. Desrosiers Ex. 11. The National Appeals Board found no error in the USPC's decision. *Id.*

In April of 2020, Faul appeared for his Statutory Interim Hearing. Desrosiers Ex. 12. However, Faul's representative was unable to attend due to the COVID-19 pandemic. *Id.* Based on that, Faul waived parole consideration and was informed that he would need to re-apply when he was ready to proceed. *Id.*

In July of 2021, Faul requested to re-calendar his statutory interim parole hearing, but noted that said hearing was contingent on "all false information in the Commission's records being corrected." Desrosiers Ex. 13. Because it was ambiguous whether Faul was requesting a hearing or not, the USPC erred on the side of caution and placed him on the parole docket for October 19, 2021. Desrosiers Ex. 14. At this statutory interim hearing, Faul began by objecting to the proceeding and to the facts relayed in the Pre-sentence Investigation Report ("PSR"). *Id.* In addition, Faul opined that the Commission would base its mandatory parole decision in February of 2023 on incorrect facts in the PSR. *Id.* The Examiner explained to Faul that this was a statutory interim rather than a mandatory parole hearing, that the Commission is authorized to base its decision on the facts in the PSR, and that if he wished to have facts excised from the official record, he would need to file a motion with the district court that presided over his trial. *Id*. After hearing this explanation, Faul refused to participate and waived parole consideration. *Id.* Honoring his request, the USPC cancelled the hearing and advised Faul that he would need to reapply for parole when he was prepared to proceed. *Id*.

In March of 2022, the USPC received another I-24 parole application from Faul. Desrosiers Ex. 15. However, upon closer examination, it was noted that Faul had modified the form so that it was, again, ambiguous whether he wanted a parole hearing or not. *Id.* The USPC realized that Faul's two-thirds (previously known as "mandatory") parole date was fast approaching in February of 2023 and thus decided that Faul would be examined for two-thirds parole slightly early, in May of 2022. Desrosiers Ex. 16. However, the day before his May hearing, Faul communicated through his BOP Case Manager that he

would not be attending the hearing. *Id.* The USPC was forced to notify victims who had planned to travel to the institution for the hearing that Faul waived his hearing. *Id.*

On September 9, 2022, the USPC decided that Faul did not qualify for parole via a record review and that a two-thirds parole hearing was required to be held. Desrosiers Ex. 17. The USPC scheduled the two-thirds parole hearing for December 14, 2022. Desrosiers Ex. 18. At Faul's request, the hearing was rescheduled for January 25, 2023, to allow additional time for him to review requested disclosures. Desrosiers Ex. 19. On January 24, 2023, the day before his hearing, Faul waived parole consideration. Desrosiers Ex. 20.

The USPC, nonetheless, ordered that the hearing be held in his absence. Desrosiers Ex. 21. On January 25, 2023, an examiner presided over Faul's two-thirds parole hearing. *Id.* Though Faul had submitted notice the prior day that he would not participate in the hearing, he did appear briefly to make a statement on the record that he was knowingly refusing to participate. *Id.* at 10-11. The Examiner encouraged Faul to remain and indicated that the hearing was the forum for him to argue the points that he wished the USPC to consider. *Id.* Faul refused this invitation and left the hearing room. *Id.*

After the hearing was concluded, the USPC denied Faul two-thirds parole, finding that, pursuant to 18 U.S.C. § 4206(d) it was likely he would commit another federal, state, or local crime. Desrosiers Ex. 22. In particular, the Commission stated:

> After consideration of all factors and information presented, at this time, the Commission is denying your release under the standards at 18 U.S.C. § 4206(d) for the following reasons: The Commission has determined that there is a reasonable likelihood that you will commit any Federal, State or local crime. You were part of a violent anti-government group responsible for the murder and serious injury of several federal law enforcement officers. You continue to deny your

> crimes, claim yourself and your conspirators are the victims, and deny the legitimacy of the U.S. Government, law enforcement, and the judiciary. Your own words show that you would not obey the requirements of your release. You have not completed any programming to address your rehabilitation such as victim impact or criminal thinking and have shown no interest in completing such programming, further emphasizing that you see no issues with your history of violence and have no intention of improving your thoughts and behaviors.

*Id.*  The Notice of Action stated that Faul would again be considered for two-thirds parole in January 2025.  *Id.*  As of February 8, 2023, Faul has not appealed this decision.

## ARGUMENT

Faul argues he has overserved his sentence and is entitled to immediate release from federal custody.  ECF No. 1 at 10.  He alleges the BOP has misconstrued and misapplied 18 U.S.C. § 4206(d), which governs his mandatory parole date.  *Id.* at 11-13.  The petition should be denied because pursuant to 18 U.S.C. § 4206(d) the BOP has correctly calculated Faul's two-thirds parole date and the USPC has recently properly denied parole to Faul on the basis that he would likely commit another crime.

**I.     The Petition Should Be Denied Because Faul's Claims Lack Merit.**

The BOP, not the USPC, has been delegated authority to calculate federal sentences. *See United States v. Wilson*, 503 U.S. 329, 335 (1992); 28 C.F.R. § 0.96.  The BOP's sentence calculation for Faul established a two-thirds parole date of February 14, 2023. *See* McEvoy Decl. ¶ 8, Ex. A at 1.  His two-third parole date was established in accordance with 18 U.S.C. § 4206(d), which requires that prisoners serve an aggregate of two-thirds of all *consecutive* terms before being eligible for a "mandatory" parole hearing.  As such, the aggregate 15-year consecutive sentence set to run at the expiration of Faul's Life

11

sentence should yield an additional two-thirds term equal to 10 years. Thus, Faul is required to serve 30 years on his life sentence plus another 10 years on the consecutive 15-year sentence, resulting in a 40-year term of imprisonment before mandatory parole eligibility.

Faul eschews this interpretation of § 4206(d) and insists that the mandatory parole date is the lesser of 30 years *or* two-thirds of each consecutive term, *whichever is earlier*, thus resulting, he argues, in a mandatory parole date of February 2013, after 30 years of service. ECF No. 1 at 11-12. Faul's interpretation is incorrect; indeed, this exact argument was advanced by Faul's co-defendant Yorie Von Kahl in recent litigation and was dismissed by both the district and circuit courts. *See Von Kahl v. Segal*, 19 F.4th 987 (7th Cir. 2021). Von Kahl and Faul were sentenced to identical terms of imprisonment for Life plus an aggregated consecutive 15-year term. As the Seventh Circuit found, § 4206(d) is unambiguous and requires 30 years to be served on a life sentence, with two-thirds of all remaining consecutive sentences of less than 45 years being also served consecutively before an inmate reaches his mandatory parole date. In so finding, the Seventh Circuit wrote:

> This leads to the question whether the Bureau has read § 4206(d) correctly, and it has. The statute says that a life term is treated the same as a 45-year term, so anyone sentenced to life is presumptively released after 30 years. But the statute also says that, unless paroled earlier, a prisoner must serve two-thirds or thirty years of "each consecutive term or terms." Von Kahl is serving three consecutive terms: life, ten years and five years. Thirty years for the life term, plus two-thirds of each term of years, adds to 40 years, running through February 2023, just as the Bureau concluded. Von Kahl wants us to collapse his sentences, to say that life plus 15 years "really" is just life, so the limit must be 30 years. True, he won't serve time in prison after his death, but there remain three distinct legal penalties, and the statute

calls for the aggregation of limits under "*each* consecutive term or terms" (emphasis added). That comes to 40 years, no matter how you do the math.

*Id*. at 989-90.

Numerous other courts have addressed this same argument (although none with facts as directly applicable as *Von Kahl*) and all have held the same. *See Hackley v. Bledsoe*, 350 F. App'x 599 (3d Cir. 2009) (holding prisoner has to serve 30 years for a life term *plus* another 20 years for the 3 consecutive 10-year terms that were are all run consecutive for § 4206(d) purposes); *Williams v. Warden*, No. 17-cv-528, 2019 WL 346428 (W.D. Va. Jan. 28, 2019) (holding a life term and two 10-year terms all run consecutive); *Jorgenson v. O'Brien*, No. 11-cv-174, 2012 WL 1565292 (N.D. W.Va. Mar. 19, 2012) (holding two 50-year sentences run consecutive to a 25-year sentence); *Shaw v. Young*, No. 16-cv-00033-RWS, 2018 WL 3081005 (E.D. Tex. June 22, 2018) (holding Petitioner must serve two-third of the life sentence *and* two-thirds of the consecutive 21-year sentence). Each of these cases is nearly identical to Faul's case, and each expressly disavowed the interpretation advanced by Faul. Indeed, *Shaw v. Young* unambiguously addressed Faul's exact argument when that court stated:

> Petitioner contends that the inclusion of the disjunction "or" in § 4206(d) renders the statute divisible. He asserts the "or" in § 4206(d) divides the statutes into two distinct clauses, with the first clause making an inmate eligible for release after two-thirds of each consecutive term and the second clause making an inmate eligible for release after serving 30 years of each consecutive term of more than 45 years, including any life term, whichever is earlier. Petitioner states that as he was sentenced to a term of life imprisonment plus three consecutive term of years sentences, his situation is governed by the second clause. He contends that under this clause, he became eligible for mandatory release after serving 30 years because he has only one term of imprisonment longer than 45 years.

13

*Id.* at *2.  The Court rejected this interpretation:

> House Conference Report on § 4206(d) provides in relevant part that, " . . . In calculating two-thirds of a term, *all sentences imposed consecutively should be considered separately and the time on each sentence added together.*" (H.R. Conf. Rep. 94–838, 99, *as reprinted in* 1976 U.S.C.C.A.N. 351, 360) (emphasis added). While the legislative history demonstrates that Congress intended the section to provide more liberal criteria for release on parole for prisoners with longer sentences, *each consecutive sentence (including life sentences) should be considered separately, and then added together to calculate the eligibility date.* The Court agrees with the Magistrate Judge's reasoning in the Report. To hold otherwise would make Petitioner's consecutive term-of-year sentences irrelevant to the calculation of his mandatory release date. Moreover, the legislative history of § 4206(d) provides that "all sentences imposed consecutively should be considered separately and the time on each sentences added together."

*Id.* at *2-3.

Faul's request for § 4206(d) to be read in the disjunctive runs counter to congressional intent, the plain reading of the statute, and other circuit and district court decisions.  Respondent urges the Court to deny Faul's request to do so here, as this chorus of courts have prudently done.

In addition, Faul misapprehends the phrase "mandatory parole release date," and, thus, has no grounds to allege that he has overserved his sentence.  As has been explained above, Faul was ordered to serve a Life term with the possibility of parole.  Although § 4206(d) grants a presumption of parole suitability after a mandatory parole date is reached, that presumption may be overcome if the USPC finds that the prisoner has either seriously or frequently violated the rules of the institution or that there is a reasonable probability that he would reoffend if released.  *See* 18 U.S.C. § 4206(d).   Faul refused to participate in his mandatory parole hearing.  The USPC examined the record and found that there was

a reasonable probability that Faul would reoffend if released. *See* Desrosiers Ex. 22. Based on this, the USPC properly complied with § 4206(d) which states that the USPC "shall not release such prisoner" if it makes such a determination. *Id.* Again, in regard to Faul's co-conspirator, as relayed by the Seventh Circuit in language very applicable to the case at bar:

> So Von Kahl's presumptive release date is February 12, 2023. The Bureau must let him go then unless the Commission acts under the statutory proviso and "determines that he has seriously or frequently violated institution rules and regulations or that there is a reasonable probability that he will commit any Federal, State, or local crime." The onus of making such a finding is on the Commission. We mention the possibility here only to clarify that February 12, 2023, is a presumptive parole release date, not an outer limit to his custody. The outer limit is the end of his life.

*Von Kahl*, 19 F.4th at 990. Because Faul was sentenced to a Life term plus an aggregate consecutive 15 years, and because the USPC has recently found that he is likely to reoffend if released, the presumption of parole suitability was properly extinguished and Faul continues to be held lawfully.

Finally, Faul cannot now vaguely attack prior decisions denying parole, because the USPC's newest parole denial in January of 2023 is under the much more permissive structure of § 4206(d) and moots any previous decision. In addition, as of February 8, 2023, Faul has not properly appealed the January 2023 decision to the National Appeals Board, thus prohibiting this Court from examining the validity of that decision. *See Merki v. Sullivan*, 853 F.2d 599, 600-01 (8th Cir. 1988) (finding federal prisoner's challenge to USPC decision premature due to prisoner's failure to appeal to the National Appeals Board). Any attempt to achieve judicial relief when Faul failed to appeal to the National

Appeals Board should result in dismissal of his petition.

In closing, Faul has failed to state a claim upon which *habeas* relief may be granted. Far from "losing track" of Faul, ECF No. 1 at 15, the USPC has worked to accommodate Faul's requests over the last two years. The USPC has also forwarded to him multiple Notices of Action, demonstrating the USPC's awareness of him as a prisoner and a potential parolee. While those decisions have not been to Faul's liking, they are legal exercises of the discretion granted by Congress to the presidentially appointed Commissioners, and Faul has fallen far short of providing a justiciable cause of action against said decisions. *See Langella v. Anderson*, 612 F.3d 938, 940 (8th Cir. 2010) ("[Courts] have jurisdiction to review a prisoners claim only insofar as it properly alleges that the Parole Commission exceeded the scope of its discretion, violated the Constitution, or reached decisions so arbitrary and capricious as to amount to a violation of due process. The agency's fact-finding process and relative weight it places on the facts is a discretionary matter that is not subject to our review.") For all these reasons, Faul's habeas petition should be denied.

## II. An Evidentiary Hearing is Unnecessary Because the Matter May Be Resolved on the Record.

A petitioner is not entitled to an evidentiary hearing if the petitioner's allegations are frivolous, where the relevant facts are not in dispute, or where the dispute can be resolved on the basis of the record. *Wallace v. Lockhart*, 701 F.2d 719, 729-30 (8th Cir. 1983). In a habeas corpus proceeding, an evidentiary hearing is appropriate only where material facts are in dispute. *Toney v. Gammon*, 79 F.3d 693, 697 (8th Cir. 1996); *Ruiz v.*

*Norris*, 71 F.3d 1404, 1406 (8th Cir. 1995).  An evidentiary hearing is not required where the question is what conclusion can properly be drawn from the undisputed facts.  *See id.; see also United States v. Winters*, 411 F.3d 967, 973 (8th Cir. 2005).

Respondent has provided sufficient facts based on the declarations and exhibits filed in this case.  An evidentiary hearing is unnecessary because this matter can be resolved on the basis of the record.

## CONCLUSION

Faul's petition should be denied, because his claims lack merit for all of the foregoing reasons.

Respectfully submitted,

Dated:  February 10, 2023

ANDREW M. LUGER
United States Attorney

*/s/ Adam J. Hoskins*

BY:  ADAM J. HOSKINS
Assistant United States Attorney
Attorney ID Number 393157
600 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN  55415
(612) 664-5600
adam.hoskins@usdoj.gov

Attorneys for Respondent